RTF:LJF
F. #2006R000687

FILED
IN CLERKS OFFICE
U.S. DISTRICT COURT E.D.N.Y.

 JAN 31 2008 

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

| | |
|---|---|
| UNITED STATES OF AMERICA | S U P E R S E D I N G<br>I N D I C T M E N T |
| - against - | |
| | Cr. No. 06-265 (S-3)(DLI) |
| ALEXANDER ALCANTARA, | (T. 21, U.S.C., §§ |
|     also known as "Moreno," | 841(a)(1), |
| DEYANIRA SANCHEZ, | 841(b)(1)(A)(ii)(II); |
|     also known as | 841(b)(1)(A)(iii); |
|     "Yanira" and "Yadira," | 841(b)(1)(B)(ii)(II) |
| LUIS M. BATISTA and | and 846; T. 18, U.S.C., §§ |
| HENRY CONDE, | 1001(a)(2), 1512(c)(2), |
| | 1512(k), 2 and |
|     Defendants. | 3551 et seq.) |

- - - - - - - - - - - - - - - - -X

THE GRAND JURY CHARGES:

## Introduction

At all times relevant to this Indictment, unless otherwise indicated:

A.  The Drug Trafficking Operation

1.  Beginning in or about December 2002 and continuing until approximately July 2007, a group of individuals engaged in drug trafficking and related acts of violence in Brooklyn, New York. These individuals included, among others, the defendants ALEXANDER ALCANTARA, also known as "Moreno," DEYANIRA SANCHEZ, also known as "Yanira" and "Yadira," John Doe #1 and John Doe #2, whose identities are known to the grand jury.

2.   John Doe #1 purchased large quantities of cocaine from others, including the defendant ALEXANDER ALCANTARA, and sold both cocaine and cocaine base ("crack") with the assistance of others including the defendant DEYANIRA SANCHEZ and John Doe #2.

3.   The defendant LUIS M. BATISTA joined the New York City Police Department ("NYPD") in or about 1997.  In or about 2004, BATISTA, who held the rank of Detective, was assigned to the 90 Precinct Detective Squad in Brooklyn.

4.   The defendant LUIS M. BATISTA furthered the drug trafficking activities of, among others, the defendants ALEXANDER ALCANTARA, DEYANIRA SANCHEZ, John Doe #1 and John Doe #2 by, among other things, providing confidential law enforcement information to John Doe #1.

B.   The Grand Jury Investigation

5.   In or about October 2004, the Federal Bureau of Investigation ("FBI") obtained information regarding drug trafficking and related acts of violence related to, among others, the defendants ALEXANDER ALCANTARA, DEYANIRA SANCHEZ, John Doe #1 and John Doe #2.  Based on that information and other evidence subsequently acquired by the FBI, a grand jury investigation commenced in the Eastern District of New York.

6.   On April 21, 2006, following the indictment of John Doe #1 by the grand jury and the issuance of an arrest

warrant, John Doe #1 was arrested and then released on bond. In June 2006, the FBI received information that John Doe #1 had fled the United States. Subsequently, the FBI determined that John Doe #1 was in the Dominican Republic.

7. On June 28, 2006, following the indictment of John Doe #2 by the grand jury and the issuance of an arrest warrant, John Doe #2 was arrested.

C. THE IAB Investigation

8. On or about March 24, 2006, the NYPD's Internal Affairs Bureau ("IAB") received information regarding the defendant LUIS M. BATISTA from a confidential informant ("CI").

9. Based on the CI's information, IAB initiated an investigation, which it documented in its database, the IA Professional Computer System.

10. The IAB investigation resulted in a log entry in the IA Professional Computer System that stated in sum and substance that, according to the CI, the defendant LUIS M. BATISTA was friends with a drug dealer, John Doe #1, and that on five occasions between June 2003 and August 2003, John Doe #1 and the CI gave cocaine to a woman in BATISTA's presence. The log also reflected that the CI identified BATISTA's picture in a photo array.

4

D.  Expansion of the Grand Jury Investigation

11. In approximately April 2006, the FBI obtained information indicating that LUIS M. BATISTA had furthered drug trafficking activities by, among other things, providing John Doe #1 with confidential law enforcement information.

12. Based on that information, the defendant LUIS M. BATISTA became a subject of the ongoing grand jury investigation regarding drug trafficking and related violence. Additionally, the grand jury investigation was expanded to include possible corruption within the NYPD.

13. On or about November 1, 2006, the defendant LUIS M. BATISTA met with John Doe #2 inside the 90th Precinct station house in Brooklyn, New York. During his meeting with BATISTA, John Doe #2 stated, in sum and substance, that John Doe #2 had been arrested on federal charges and asked whether the arrest might possibly be the result of information provided by John Doe #1 in the course of cooperating with law enforcement. BATISTA responded, in sum and substance, that he was sure that John Doe #1 was in the Dominican Republic, and therefore, could not be cooperating with law enforcement.

14. During his November 1, 2006 meeting with John Doe #2, the defendant LUIS M. BATISTA became concerned that John Doe #2 might either be an IAB informant or cooperating with federal law enforcement. Accordingly, soon after meeting with

5

John Doe #2, BATISTA attempted to discover whether IAB had initiated an investigation of him. In particular, BATISTA asked the defendant HENRY CONDE to check whether there was a log concerning BATISTA in the IA Professional Computer System.

15. The defendant HENRY CONDE joined the NYPD in or about 1994. In or about December 2005, CONDE, who held the rank of Sergeant, was assigned to an IAB squad in Queens. CONDE remained in IAB until April 2007, when he was transferred to the Housing Bureau.

16. On or about November 6, 2006, the defendant HENRY CONDE searched the IA Professional Computer System for information regarding the defendant LUIS M. BATISTA and read the log concerning the investigation of BATISTA's relationship with John Doe #1.

17. After reading the log, the defendant HENRY CONDE told the defendant LUIS M. BATISTA that there was a log concerning BATISTA in the IA Professional Computer System, and CONDE provided BATISTA with the log's contents.

18. Based on the information that the defendant HENRY CONDE provided to him, the defendant LUIS M. BATISTA apparently became convinced that John Doe #2 was working with law enforcement.

19. Thereafter, on February 2, 2007, the defendant LUIS M. BATISTA again met with John Doe #2 inside the 90th

Precinct station house in Brooklyn, New York. During the meeting, BATISTA stated, among other things, that he was almost 100 percent sure that he became an investigative subject when John Doe #2 was arrested by federal agents and discussed BATISTA during post-arrest questioning. Additionally, BATISTA stated, falsely, that he did not know about the private lives of John Doe #1 and John Doe #2, and that neither John Doe #1 nor John Doe #2 had ever done anything bad in front of him.

20. On or about February 24, 2007, the defendant HENRY CONDE voluntarily met with FBI Special Agents in Elmont, New York. During this meeting, in sum and substance, CONDE admitted that he reviewed the defendant LUIS M. BATISTA's log in the IA Professional Computer System at BATISTA's request and that he told BATISTA what was in the log. CONDE stated that other members of the NYPD, including John Doe #3, whose identity is known to the grand jury, have also asked CONDE to check for logs on them in the IA Professional Computer System. However, CONDE stated that he had not checked a log for John Doe #3 or anyone else besides BATISTA and that he had not revealed the contents of a log to anyone besides BATISTA.

21. On or about March 14, 2007, the defendant HENRY CONDE again voluntarily met with FBI Special Agents in Elmont, New York. During this meeting, in sum and substance, CONDE again admitted that he reviewed the defendant LUIS M. BATISTA's log in

7

the IA Professional Computer System at BATISTA's request. CONDE also stated that BATISTA was the only person whose name he ever searched in the IA Professional Computer System other than for a legitimate work-related reason.

22. On or about March 22, 2007, at an FBI office in Manhattan, New York, the defendant HENRY CONDE voluntarily met with FBI agents a third time. After being confronted with evidence documenting his use of the IA Professional Computer System, CONDE, in sum and substance, admitted that he had reviewed John Doe #3's log at John Doe #3's request, that there was not a legitimate work-related reason for conducting the review, and that, based on the content of John Doe #3's log, CONDE had advised John Doe #3 how to handle IAB's investigation of him.

<u>COUNT ONE</u>
(Conspiracy Involving Cocaine Base and Cocaine)

23. The allegations in paragraphs 1 through 22 above are realleged and incorporated as if fully set forth in this paragraph.

24. In or about and between December 2002 and July 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ALEXANDER ALCANTARA, also known as "Moreno," DEYANIRA SANCHEZ, also known as "Yanira" and "Yadira," and LUIS M. BATISTA, together with others, did knowingly and intentionally conspire to

8

distribute and possess with intent to distribute one or more controlled substances, which offense involved (a) 50 grams or more of a substance containing cocaine base, a Schedule II controlled substance, and (b) five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Sections 846, 841(b)(1)(A)(iii) and 841(b)(1)(A)(ii)(II); Title 18, United States Code, Sections 3551 et seq.)

## COUNT TWO
(Cocaine Distribution)

25.  The allegations in paragraphs 1 through 22 above are realleged and incorporated as if fully set forth in this paragraph.

26.  In or about April 2006, within the Eastern District of New York, the defendant ALEXANDER ALCANTARA, also known as "Moreno," did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved 500 grams or more of a substance containing cocaine, a Schedule II controlled substance.

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(ii)(II); Title 18, United States Code, Sections 3551 et seq.)

9

## COUNT THREE
(Cocaine Base Distribution)

27. The allegations in paragraphs 1 through 22 above are realleged and incorporated as if fully set forth in this paragraph.

28. On or about July 12, 2007, within the Eastern District of New York, the defendant DEYANIRA SANCHEZ, also known as "Yanira" and "Yadira," together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved 50 grams or more of a substance containing cocaine base, a Schedule II controlled substance.

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT FOUR
(Cocaine Base Distribution)

29. The allegations in paragraphs 1 through 22 above are realleged and incorporated as if fully set forth in this paragraph.

30. On or about July 26, 2007, within the Eastern District of New York, the defendant DEYANIRA SANCHEZ, also known as "Yanira" and "Yadira," together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved 50 grams or more of

10

a substance containing cocaine base, a Schedule II controlled substance.

(Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT FIVE
(Conspiracy to Obstruct Justice)

31. The allegations in paragraphs 1 through 22 above are realleged and incorporated as if fully set forth in this paragraph.

32. In or about and between November 2005 and March 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LUIS M. BATISTA and HENRY CONDE did knowingly, intentionally and corruptly conspire to obstruct, influence and impede one or more official proceedings, to wit: a federal grand jury investigation in the Eastern District of New York and the federal prosecution of BATISTA in the Eastern District of New York, in violation of Title 18, United States Code, Section 1512(c)(2).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.)

## COUNT SIX
(Obstruction of Justice)

33. The allegations in paragraphs 1 through 22 above are realleged and incorporated as if fully set forth in this paragraph.

34. In or about and between November 2005 and March 2007, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants LUIS M. BATISTA and HENRY CONDE did knowingly, intentionally and corruptly obstruct, influence and impede, and attempt to obstruct, influence and impede, one or more official proceedings, to wit: a federal grand jury investigation in the Eastern District of New York and the federal prosecution of BATISTA in the Eastern District of New York.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

## COUNT SEVEN
(False Statement)

35. The allegations in paragraphs 1 through 22 above are realleged and incorporated as if fully set forth in this paragraph.

36. On or about February 24, 2007, within the Eastern District of New York, the defendant HENRY CONDE did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction

of the executive branch of the Government of the United States, to wit: the FBI, in that he falsely stated and represented to Special Agents of the FBI that he had never reviewed John Doe #3's log in the IA Professional Computer System, when, in fact, as he then and there well knew and believed, he had reviewed John Doe #3's log in the IA Professional Computer System.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

## COUNT EIGHT
(False Statement)

37. The allegations in paragraphs 1 through 22 above are realleged and incorporated as if fully set forth in this paragraph.

38. On or about March 14, 2007, within the Eastern District of New York, the defendant HENRY CONDE did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the FBI, in that he falsely stated and represented to Special Agents of the FBI that the defendant LUIS M. BATISTA was the only person whose name CONDE had ever searched in the IA Professional Computer System other than for a legitimate work-related reason, when, in fact, as he then and there well knew and believed, BATISTA was not the only person whose name he had ever

13

searched in the IA Professional Computer System other than for a legitimate work-related reason.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

A TRUE BILL

_____
FOREPERSON

_____
BENTON J. CAMPBELL
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

FORM DBD-34

F. #2006R00687

No. _____ Action: _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL *Division*

THE UNITED STATES OF AMERICA

vs.

ALEXANDER ALCANTRARA, also known as "Moreno,"
DEYANIRA SANCHEZ, also known as "Yanira" and "Yadira,"
LUIS M. BATISTA and HENRY CONDE,

Defendant(s).

## SUPERSEDING INDICTMENT

(T. 21, U.S.C., §§ 841(a)(1), 841(b)(1)(A)(ii)(II),
841(b)(1)(A)(iii), 841(b)(1)(B)(ii)(II) and 846;
T. 18, U.S.C., §§ 1001(a)(2), 1512(c)(2),
1512(k), 2 and 3551 et seq.)

A true bill.

_____
Foreman

Filed in open court this _31_ day,
of _January_ A.D. 20 _08_

_____
Clerk

Bail, $ _____

LEE J. FREEDMAN, AUSA - (718) 254-6289